UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF FLORIDA
TALLAHASSEE DIVISION

TAYLOR BIRO,

     Plaintiff,

v.                                                  CASE NO. 4:22-cv-00442-AW-MJF

CITY OF TALLAHASSEE,

     Defendant.

_____/

## REPLY MEMORANDUM

Pursuant to this Court's Order of May 2, 2023, [ECF-22], the City of Tallahassee, Florida ("the City"), files the following Reply to Plaintiff's Response to Motion to Dismiss [ECF-21], and states:

I.    **Plaintiff fails to plausibly allege causation for her new claim regarding opposition to Mr. Eddie Gallagher.**

    A.   **The "Cat's Paw" theory of liability does not apply to § 1983 actions against governmental entities.**

To succeed on her claim, well-settled law holds that Plaintiff Biro must establish that a majority of the members of the City Commission shared an illegal/retaliatory motive. [*See* ECF-20 (listing cases, including *Mason v. Village of El Portal,* 240 F.3d 1337, 1339 (11th Cir. 2001) ("There can be no municipal liability unless all three members of the [five-member] council who voted against reappointing plaintiff shared the illegal motive.")].

Lacking the ability to plead facts that would plausibly support this requirement, Biro incorrectly contends that she could succeed by proving that "one Commissioner with a discriminatory motive poison[ed] another member." [ECF-21, p.7 (*citing Staub v. Proctor Hosp*., 562 U.S. 411, 422 (2011) (applying the so-called "cat's paw" theory of liability). *Staub*, however, was a USERRA case not involving municipal liability under 42 U.S.C. § 1983 and does not apply.

Under the "cat's paw" theory, a decisionmaker may be held liable for "rubber stamping" the discriminatory/retaliatory recommendation of a non-decision-making supervisor without independently investigating the matter. *See Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) ("In such a case, the recommender is using the decisionmaker as a mere conduit, or "cat's paw" to give effect to the recommender's discriminatory animus.").

As this Court has recognized, however, the "cat's paw" theory of liability does <u>not</u> apply to 42 U.S.C. § 1983 claims against municipal entities—which are instead governed by the *Monell* standard.[1] *See Krika v. City of Defuniak Springs, Florida*, 3:16CV265-RV/CJK, 2017 WL 6336081, at *4 (N.D. Fla. Sept. 15,

---

[1]     Based upon *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978), the *Monell* standard provides that municipal liability under 42 U.S.C. § 1983 cannot be based on vicarious liability or *respondeat superior*, but must rather result from an unconstitutional policy or custom municipality itself. *See Baxter v. Roberts*, 54 F.4th 1241, 1270 (11th Cir. 2022).

2017) (rejecting application of the 'cat's paw' theory to § 1983 claims against a municipality). As noted by the *Krika* court, the Supreme Court has rejected such an approach to municipal liability:

> The mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988).

See also *Jackson v. City of Centreville*, 899 F. Supp. 2d 1209, 1222 (N.D. Ala. 2012) ("The cat's paw theory does not apply in the § 1983 context."); *Norris v. City of Flovilla, Georgia*, 2017 WL 902866, at *6 (M.D. Ga. Mar. 7, 2017) (same); *Harper v. Houston Cnty. Bd. of Educ.*, 2019 WL 3072631, at *7 (M.D. Ala. July 12, 2019) (same); *Polion v. City of Greensboro*, 26 F. Supp. 3d 1197, 1218, fn.15 (S.D. Ala. 2014), *aff'd*, 614 Fed. Appx. 396 (11th Cir. 2015) (same); *Richards v. City of Atlanta*, 2015 WL 11142459, at *5, fn.5 (N.D. Ga. Mar. 31, 2015) (same); *Files v. DeKalb Cnty. Sch. Dist.*, 2012 WL 716055, at *4 (N.D. Ga. Mar. 5, 2012) (same).[2]

---

[2]    The Eleventh Circuit has assumed "arguendo" that the cat's paw theory could be applied in a § 1983 case against a decisionmaker sued in their

Plaintiff's argument for application of the "cat's paw" theory of liability is thus improper and should be rejected. Rather, as held by the Courts in *Campbell, Matthews, Mason, Church, Conner*, *Bates*, *Mack*, *Rolle*, and *Dixon*, [ECF-20, pp.7-8], Plaintiff must establish that a majority of the members of the City Commission shared an illegal/retaliatory motive.

## B. <u>Plaintiff does not allege that a majority of the Commissioners even knew of her protected speech.</u>

Biro incorrectly contends that her Complaint contains allegations sufficient to plausibly suggest that a majority of the Commissioners knew of her opposition to Mr. Gallagher. Biro specifically points to allegations that she addressed the issue at the CPRB's September and October meetings, and that the City Commission addressed Mr. Gallagher at its own September meeting. [ECF-21, pp.3-4]. The City does not deny these events. The relevant point, however, is that there are no allegations that any Commissioner attended (or was even aware of Plaintiff's speech at) the CPRB's meetings, and Biro did not herself speak at the Commission's September meeting. While these allegations support that Plaintiff engaged in protected speech, they do nothing to establish the Commission's knowledge of such speech.

---

*individual* capacity—a claim not subject to the *Monell* standard for municipal liability. *See Gilroy v. Baldwin*, 843 Fed. Appx. 194, 197 (11th Cir. 2021).

C.    <u>Plaintiff fails to otherwise plausibly suggest causation</u>.

As noted in the City's Motion to  Dismiss, Biro neither alleges facts that would constitute direct evidence of a retaliatory motive (such as threats or comments directed towards Biro about her position), nor circumstantial evidence. There are no allegations even suggesting that the Commission disagreed with Biro on the issue—such as expressions of support for Mr. Gallagher or even mild disapproval of those who opposed him—much less that the Commission was so upset by Biro's position that it was motivated to retaliate against her.

Indeed, Biro's allegations demonstrate that opposition to Mr. Gallagher was widespread in the community and shared by her fellow members of the CPRB. [See ECF-21 ("The majority of the members of the CPRB publicly shared Plaintiff's concerns[.]") (citing ECF-18, ¶26). *See also* ECF-20, p.10, fn.7 (video of the Commission's September 7, 2022, meeting demonstrating public opposition to Mr. Gallagher separate from Biro)].

Plaintiff's sole argument for causation is temporal proximity—but even this argument falls woefully short. First, the test looks to "temporal proximity <u>between knowledge</u> of protected activity <u>and an adverse action</u>." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (cleaned up, emphasis added). See e.g. *Santiago v. Univ. of Miami*, 2023 WL 3045417, at *11 (S.D. Fla. Apr. 6,

2023)[3] ("In determining the temporal proximity between statutorily protected activity and the adverse employment action, courts begin their calculation on the date the employer gains the knowledge of said protected activity.") (citing *Raspanti v. Four Amigos Travel, Inc*., 266 F. App'x 820, 823 (11th Cir. 2008)). Temporal proximity thus cannot be used to infer causation when there are no facts allegeing knwlege at all—much less knowledge acquitted on a specific date.

Thus, while Biro alleges that there was "less than a month" between September 7, 2022, and October 12, 2022 [ECF-21, p.5]—these dates have little meaning to the case. The Commission certainly discussed Mr. Gallagher on September 7th but, again, *Biro* did not speak (and was not spoken about) at the meeting.[4] The Commission also did not entertain a motion or vote to remove Biro (the "adverse action") until December 7, 2022. The relevant dates are, at most, Biro's August 8, 2022, email to Mayor Dailey (the only event allegedly known to any Commissioner) and December 7, 2022 (the date of the Commission's vote to remove Plaintiff). But this is insufficient because: (a) this alleges knowledge

---

[3]      *Report and recommendation adopted*, 2023 WL 3043414 (S.D. Fla. Apr. 21, 2023).

[4]      Video of the public meeting is not hearsay. Contrary to Plaintiff's assertion, the video is not offered to prove anyone's "good intentions." Rather, the video is relevant because it demonstrates, objectively, that Biro neither spoke, nor was spoken about, at the meeting and that opposition to Mr. Gallagher was voiced by many others.

by only a single Commissioner, and (b), the four-month gap would be insufficient to infer causation under controlling law anyway. *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) (temporal proximity must be "very close" and a "three (3) month period, without more, does not rise to the level of 'very close.'").

**D.   Claims lacking factual support at the pleading stage cannot be prosecuted with the mere hope that discovery will reveal needed support.**

Biro protests that many cases relied upon the City were decided at summary judgment stage—rather than on a motion to dismiss. [ECF-21, pp.5-6 (listing cases)]. This is as true as it is irrelevant. Certainly, cases decided at summary judgment do not generally speak to pleading requirements. But the legal requirements announced by such courts for a plaintiff to succeed are no less controlling. A plaintiff must first plead facts sufficient to plausibly state a claim under the controlling law before such facts can be tested at summary judgment.

The Federal Rules of Civil Procedure do not permit a plaintiff to proceed on a speculative pleading with the mere hope discovery will provide needed factual support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

As one Court explained:

> The Rules of Civil Procedure do not contemplate that a plaintiff may file a complaint rife with conclusory and speculative allegations, hoping to find data and evidence to support the allegations through subsequent discovery. . . . Thus, to the extent that Plaintiffs seek an Order converting Defendant's Motion into a motion for summary judgment, and deferring ruling until Plaintiffs' can conduct discovery relevant to Defendant's business practices, the Motion to Defer is due to be denied.

*Moss v. Liberty Mut. Fire Ins. Co*., 2017 WL 4676629, at *7 (M.D. Fla. Aug. 18,

2017).

Indeed, proceeding in this manner may subject a plaintiff to sanctions:

> [T]he Court notes the troubling nature of one of Plaintiffs' statements. Specifically, in their Response [to the Motion to Dismiss], Plaintiffs state:
>
>> This is a properly pled cause of action. Plaintiff is now entitled to break into discovery and uncover the facts that support its claim. If there is no evidence, summary judgment is the appropriate vehicle to dispose of the claim.
>
> What Plaintiffs have described is a fishing expedition. If there is no evidence, Rule 11 sanctions may be imposed. While what happened to the Plaintiffs' son is undeniably tragic, they should keep in mind that fishing expeditions will not be tolerated by this Court.

*Delva v. MSC Crociere S.A*., 2014 WL 11706430, at *2 (S.D. Fla. Oct. 24, 2014)

(cleaned up). *See also Tormenia v. LVNV Funding, Inc*., 2019 WL 3429591, at

*5 (M.D. Fla. July 30, 2019) ("Discovery is not intended as a fishing expedition

8

permitting the speculative pleading of a case first and then pursuing discovery to support it."); *Lazarre v. JPMorgan Chase Bank, N.A*., 780 F. Supp. 2d 1320, 1329 n.16 (S.D. Fla. 2011) (Discovery "is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact."); *Belik v. Carlson Travel Grp., Inc*., 864 F. Supp. 2d 1302, 1314 (S.D. Fla.2011) ("Plaintiff's attempt to reverse the logical sequence in litigation—claim first, discovery later—is unavailing.").

II.   <u>Plaintiff fails to demonstrate that her already dismissed ("abolish police" sticker) claim has merit</u>.

The Amended Complaint contains no new facts which address or cure the Court's decision that the City did not violate Biro's First Amendment rights if it removed her for voicing support for the "abolish police" movement. Biro's Response is little more than improper re-argument—including rejected arguments that she was good at her job and that her bias/speech never actually caused any problems. [Compare ECF-21, p.17, *with* ECF-15, p.8 ("The government's legitimate interest in avoiding disruption does not require proof of actual disruption")].

On this claim, the City thus merely notes:

- The City and the Court have always acknowledged and understood the CPRB to be an "advisory board," and no one has suggested that the CPRB itself makes policy. [*See e.g.* ECF-15 ("The role required

9

[Biro] to serve in an advisory capacity with input on policy issues.")].
Biro's argument on this issue is confusing and irrelevant.

- It was the *Ordinance* creating the CPRB, [ECF-4-1], that sets out the
  Commission's purpose in creating the CPRB "to enhance trust
  between the Tallahassee Police Department [] and the community
  by creating an unbiased panel of volunteers," and not merely the
  CPRB's "mission statement," [ECF-4-3]. As the Court has already
  acknowledged: "It should go without saying that having a Review
  Board member espouse an 'abolish police' message could
  undermine that goal . . . [and] ran the risk of publicly 'discrediting'
  the Review Board's functioning as an unbiased advisory group."
  [ECF-15, pp.7-8].

- The establishment of basic eligibility requirements that help filter
  some potentially biased candidates does not excuse Biro's clear
  bias. The City need not list every possible disqualifying bias; indeed,
  the basic eligibility requirements do not list *any* specific biases—but
  rather relationships, jobs, and other life events that might
  reasonably carry a bias into the position.

Biro's cursory re-argument and conclusion that "all of the *Pickering* factors
weigh in [her] favor," [ECF-21, p.22], is incompatible with the decision already
reached by Court. [ECF-15, p.10 ("Considering all the relevant factors, I conclude
that the *Pickering* balancing favors the City.")]. This claim should now be
dismissed with prejudice.

10

<u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the above memorandum complies with Local Rule 7.1(I), as it consists of only <u>2,248</u> words.

Respectfully submitted this <u>3rd</u> day of May 2023.

*/s/ Scott J. Seagle*

 Scott J. Seagle, (FBN: 57158)
sjseagle@coppinsmonroe.com
bmiller@coppinsmonroe.com

COPPINS MONROE, P.A.
1319 Thomaswood Drive,
Tallahassee, FL 32308
Office: 850-422-2420   Fax: 850-422-2730

ATTORNEYS FOR DEFENDANT
CITY OF TALLAHASSEE, FLORIDA

<u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5(b)(3) and N.D. Florida Local Rule 5.1, this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court.

*s/ Scott J. Seagle*
Attorney